UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10877-RGS

THERESA FITZGERALD, on behalf of
herself and all others similarly situated,

v.

POLAR CORP.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

November 10, 2020

STEARNS, D.J.

Theresa Fitzgerald brought this aspiring class action against Polar Corp. d/b/a Polar Beverages (Polar) alleging common-law fraud, deceit, and misrepresentation (Count I), breach of express and implied warranties (Counts II and III), negligent misrepresentation (Count IV), unjust enrichment/restitution (Count V), and violations of the Massachusetts Consumer Protection Act, Gen. Laws ch. 93A (Count VI). Fitzgerald asserts that Polar's ginger ale brands (Polar Ginger Ale, Polar Green Tea Ginger Ale, and Polar Pomegranate Ginger Ale) are falsely and deceptively labeled, advertised, and marketed "as 'MADE FROM REAL GINGER.'" Compl. ¶ 2. The Complaint appears to have been imperfectly copied from a nearly identical case brought in the Northern District of California involving

Canada Dry ginger ale.  *See Fitzhenry-Russell v. Keurig Dr. Pepper*, 345 F. Supp. 3d 1111 (N.D. Cal. 2018); *see also* Compl. ¶ 62 (mistakenly referencing "Canada [D]ry (sic)" as the instant defendant).

In essence, Fitzgerald contends that the claim of "real ginger"[1]

> leads consumers to reasonably believe that Polar's soft drinks are made using real ginger root — i.e., the spice made by chopping or powdering the root of the ginger plant, — and that consumers who drink the soft drink will receive the health benefits associated with consuming real ginger.

Compl. ¶ 2 (footnote omitted).  Fitzgerald acknowledges that Polar's ginger ale "contains some ginger compounds, [however] the miniscule amount that Polar uses provides none of the health benefits consumers associate with real ginger."  *Id.* ¶ 18.[2]  Fitzgerald claims that "in a market environment where consumers were fleeing 'regular' sodas due to increasing concerns about the

---

[1] The term "real ginger" is somewhat of an oxymoron.  Ginger is botanically a cultigen, meaning that it has no ancestors in the wild nor is it genetically unique.  Rather it is a product of several thousand years of genetic breeding and modification of the *Zingiber officinale* flowering plant.  *See* P. N. Ravindran & K. Nirmal Babu, Ginger: The Genus Zingiber (CRC Press 2016).  Botanically, ginger (as it is most commonly known), is one of the spices that make up the *Zingiberaceae* family.  Apart from the version best known to bakers as a ground spice (gingerbread) or to sushi lovers in its pickled form, other gingers familiar to kitchen mavens include turmeric and cardamon.

[2] The proposition that consumers associate a "health benefit" with a sugared carbonated beverage is somewhat dubious, although Confucius is said to have eaten raw ginger with every meal for health reasons.  Barbara Pickersgill, The Cultural History of Plants at 163-164 (2005).

2

health problems they cause[,] Polar's misrepresentations have misled thousands of consumers and caused them to pay a premium for Polar beverages." *Id.* ¶ 4.[3]

Polar moves to dismiss the Complaint asserting that there is nothing false about Polar's advertising claims – its ginger ales are made with some ginger (as plaintiff concedes), and the labeling of the drinks makes no representations as to the amount or type of ginger beyond the hyperbolic reference to "real." Polar notes that Fitzgerald claims that the label, "Made From Real Ginger," causes "consumers to reasonably believe that the beverage contains 'ginger *root.*'" *Id.* ¶ 2 (emphasis added). Polar next argues that, as Fitzgerald's claims are based on consumer fraud, her Complaint must (and does not) satisfy the "who, what when and where" pleading requirements of Fed. R. Civ. P. 9(b). Polar finally wheels up the "economic loss doctrine" which precludes recovery of economic damages in certain tort actions in the absence of actual personal or property damage.

Relying on *Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381 (2004), Fitzgerald counters that to survive a motion to dismiss she "need only allege facts showing it is plausible that a statement 'has the capacity to

---

[3] The proposed class includes "[a]ll persons who, between May 7, 2016 and the present, purchased in the United States, any Polar Ginger Ale." Compl. ¶ 31.

3

mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product).'" *Id.* at 396. She further contends "that the claim 'MADE FROM REAL GINGER' on Polar ginger ale is literally false because natural flavor and trace amounts of ginger compounds is not real ginger."[4] Pl.'s Opp'n at 5. Fitzgerald finally argues that her breach of express warranty, breach of implied warranty, and unjust enrichment claims sound in contract and therefore are not subject to the federal Rule 9(b) heightened pleading standard. *See id.* at 15.

---

[4] In her Opposition, Fitzgerald backs away from this assertion, arguing instead that

> Polar's "MADE FROM REAL GINGER" claim is literally false because the product *does not contain ginger root* and that Polar made these statements with knowledge of their falsity. Similarly, for Plaintiff's negligent misrepresentation claim, Plaintiff has alleged that Polar provided false information for the guidance of others. ("Throughout the Class Period, Polar prominently made the claim "MADE FROM REAL GINGER" on the front of its Polar Ginger Ale cans and bottles because it knew that would cultivate a wholesome and healthful image for Polar . . ."). Contrary to Polar's argument, Plaintiff's claims do not require literal falsity. The First Circuit has said that "the locus classicus of fraud is a seller's affirmative false statement or a half-truth, i.e., a statement that is literally true but is made misleading by a significant omission."

Pl.'s Opp'n at 20 (emphasis added) (internal citations omitted).

4

BACKGROUND

Fitzgerald states that she purchased various Polar ginger ales on numerous occasions within Massachusetts over the past four years. She typically purchases one-liter bottles of Polar Ginger Ale at a local grocery, most recently Shaw's in West Wareham, Massachusetts.  She contends that in buying Polar ginger ales she relied on the product label claim "MADE FROM REAL GINGER", which she "believe[s] . . . meant that Polar Ginger Ale was made using ginger root and was, as a result, a healthier alternative to regular sodas."  Compl. ¶ 28.[5]   Fitzgerald alleges that "[c]onsumer research shows that the vast majority of consumers understand the phrase 'MADE FROM REAL GINGER' to mean that Polar Ginger Ale is made using ginger root, and not miniscule amounts of a flavor extract and that they will obtain the health benefits of consuming real ginger."  *Id.* ¶ 17.[6]

---

[5] A consumer who encountered chunks of ginger root in her drink would likely be bringing a different lawsuit, as ginger in its raw form can have deleterious side effects, particularly for women who are pregnant.  WebMD: Ginger, https://www.webmd.com/vitamins/ai/ingredientmono-961/ginger (last visited Nov. 10, 2020).

[6] Fitzgerald fails to specify the source of the research or whether Polar was a part of the alleged study.  Rather she contends that "[t]his research is consistent with how Polar intended consumers to interpret the phrase.  Polar wanted consumers to think the following after seeing the 'MADE FROM REAL GINGER on the label: This is perfect for me! I can now enjoy a drink that tastes great AND is made with natural healthier ingredients – like REAL ginger.'"  *Id.* ¶ 17.

5

Driving the point home, the Complaint states that

> [i]n truth, Polar Ginger Ale is not made from real ginger. Instead, it is made from carbonated water, high fructose corn syrup and/or sugar, citric acid, caramel color, and "natural flavoring," i.e., a flavor compound comprised predominately of flavor extracts not derived from ginger, and a miniscule amount of a ginger flavor extract. But Polar's ginger flavor extract is not "real ginger" as reasonable consumers understand that term. It is manufactured in a lab using various chemicals and extraction processes. And, although the flavor extract contains some ginger compounds, this microscopic amount of ginger flavor extract provides none of the health benefits consumers associate with real ginger.

*Id.* ¶ 3.[7]

In describing her damages, Fitzgerald claims that, without ginger root, "the Products have no, or, at, a minimum, a much lower, value to [her]." *Id.* ¶ 29. Fitzgerald states that her injury "was . . . paying more money for the Products that she would have paid otherwise." *Id.* Fitzgerald represents that

---

[7] Fitzgerald also alleges that Polar advertises that its ginger ale contains four times more real ginger than the products of its competitors. The allegation has no connection to Polar's labeling of its drinks. As best the court can determine from following a link that Fitzgerald's Opposition provides to Polar's website, it is true that the website poses the question, "What makes Polar Ginger Ale different?" The answer provided is that it is "[m]ade with 20% Less Sugar than leading brands and 4x More Real Ginger and no preservatives, sodium, or caffeine." Fitzgerald does not allege that she ever saw the website or considered the "4x" claim in making her decision to purchase Polar ginger ale or, for that matter, that the claim is untrue. *See Aspinwall*, 442 Mass. at 394; Compl. ¶ 23. Consequently, the court will disregard the allegation.

if Polar reformulated its ales by using ginger root (in some unspecified quantity), she "would likely purchase Polar's Products again in the future." *Id.* ¶ 30. Fitzgerald admits that she "does not know the [current] formula for Polar's Products and cannot test whether or not the beverages are made using ginger root before purchasing." *Id.* In addition to a monetary award, Fitzgerald asks the court to enjoin Polar from labeling its Products with the phrase "MADE FROM REAL GINGER unless the product is actually made using ginger root rather than a miniscule amount of a ginger flavor extract," *id.*, although she admits that she does not "know at any given time, which brands are owned by Polar and whether its representations about 'real ginger' are truthful." *Id.*

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The court must disregard allegations that are legal conclusions, even when disguised as facts. *See Iqbal,* 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). The court must then determine, based on the allegations that

remain and all reasonable inferences that may be drawn from them, whether the Complaint alleges a plausible claim for relief. *See id.* at 679. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### Rule 9(b)

Polar asserts that Fitzgerald fails to plead her fraud claims with the particularity required under Federal Rule of Civil Procedure 9(b). The "heightened pleading requirement" of Fed. R. Civ. P. 9(b) also applies to claims of misrepresentation made pursuant to Chapter 93A. *See Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017). In *Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019), a case in which a consumer professed disappointment at not finding actual hazelnuts or hazelnut "cream" (it is not clear which) in a package of ground Hazelnut Crème coffee, the First Circuit made short shrift of the Rule 9(b) "four question" test – "the who" being Reily Foods; the "Hazelnut Crème" claim the "what"; the label the "where"; and the occasion on which the plaintiff purchased the coffee the "when." *Id.* at 39. The court will assume that the same simple fill-in-the-blanks test applies here as well.

### Counts I and IV

To recover on her fraud claims, Fitzgerald must establish that Polar made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing her to act on this representation, that she reasonably relied on the representation as true, and that she acted upon it to her detriment. *See Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007). Negligent misrepresentation requires the same elements, "except that the defendant needs neither knowledge that the statement was false nor intent to deceive the plaintiff." *Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 163 (D. Mass. 2016), (citing *Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 749 (2002)). "There is an important threshold determination for any misrepresentation claim, be it for deceit or for negligent misrepresentation: only statements of fact are actionable; statements of opinion cannot give rise to a deceit action, or to a negligent misrepresentation action." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 (1st Cir. 2001) (internal citations omitted). "[S]tatements that are susceptible of actual knowledge can give rise to a claim of deceit, if those statements are false." *Id.* at 22, quoting *Zimmerman v. Kent,* 31 Mass. App. Ct. 72, 74-75 (1991). Counts I and IV fail on the bedrock ground of the absence of any false statement. Fitzgerald concedes that, while the amount of ginger in Polar's ales is "miniscule," some ginger is contained in the formula. She also concedes that the Polar labeling makes no

representation as to the specific amount of ginger the drinks contain. Finally, no reasonable consumer could rely on a claim of "real ginger" in a soft drink as a representation that the drink contains chunks of "ginger root" as opposed to a ginger taste.[8] Accordingly, Counts I and IV must be dismissed.

## Counts II and III

In Count II, Fitzgerald alleges a breach of express warranty, "under Massachusetts law, . . . that Polar Ginger Ale is 'Made From Real Ginger' [which] is an affirmation of fact or promise that the Product is made using ginger root and contains more than miniscule amounts of ginger . . . ." Compl. ¶¶ 52-53. Count III, citing Mass. Gen. Laws ch. 106, § 2-314(e), alleges a breach of an implied warranty of merchantability for failing to "conform to the promise or affirmation of fact made on the container or label . . . that the Product is MADE FROM REAL GINGER . . . when it is made only from miniscule amounts of ginger flavor extract, not from ginger root."

---

[8] According to the Shorter Oxford English Dictionary (3d ed. 1969), the most common definition of "ginger" is "'[t]he rhizome of the tropical plant *Zingiber officinale*, characterized by its hot spicy taste; used in cookery and medicine and as a sweetmeat." It can also refer to a "sandy" color of hair, a wine, or a hot temper, but not to a "root" (other than to a botanist familiar with the scientific meaning of the prefix "rhizo.").

Compl. ¶¶ 60-61.  Counts II and III fail for the same reason that Counts I and IV come up short and will, consequently, also be dismissed.[9]

**Count V**

To succeed with an unjust enrichment claim under Massachusetts law (Count V), Fitzgerald must show that Polar "received, was aware of, and accepted or retained a benefit conferred by the plaintiffs 'under circumstances which make such acceptance or retention inequitable.'" *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012), (quoting *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294 (D. Mass. 2009)); *see also*

---

[9] Moreover, the only damages asserted in the Complaint are economic ones – "the amount [putative plaintiffs] paid for the Products", Compl. ¶ 48; "paying less for Polar Ginger Ale," *id.* ¶ 56; "would not have purchased Polar or would have, at a minimum, paid less for the product," *id.* ¶ 66; "suffered pecuniary loss," *id.* ¶ 71; "were damaged in the amount they paid to obtain Polar Ginger Ale," *id.* ¶ 75.  The economic loss doctrine generally bars recovery for certain tort and warranty claims "in the absence of personal injury or property damage." *See Dill v. Am. Home Mortg. Servicing, Inc.*, 935 F. Supp. 2d 299, 303 (D. Mass. 2013); *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993) (affirming summary judgment in favor of defendant on negligence and breach of express and implied warranty claims where plaintiff's damages were solely economic).  "Essentially, where the negligent design or construction of a product leads to damage only to the product itself, the recovery for economic loss is in contract, and the economic loss rule bars recovery in tort." *Wyman v. Ayer Properties, LLC,* 469 Mass. 64, 69 (2014); *Cruickshank v. Clean Seas Co.*, 346 B.R. 571, 582 (D. Mass. 2006) ("Unless the plaintiffs are able to show that they sustained personal injury or damage to other property, the economic loss doctrine bars their claims for negligence and breach of implied warranties."); *see also Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998 (1st Cir. 1992) (Breyer, C.J.).

*Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) ("The benefit must be unjust, a quality that turns on the reasonable expectations of the parties."). As Polar made no actionable misrepresentation to Fitzgerald, the retention of the purchase price cannot be found to be unjust. Count V will also be dismissed.

### Count VI

In Count VI, which is brought under the Massachusetts Consumer Protection Act, popularly known as Chapter 93A, Fitzgerald asserts that Polar's MADE FROM REAL GINGER label is "false and [Polar] knew that the representations were false when they made them." Compl. ¶¶ 77-78. "Whether conduct is deceptive is initially a question of fact." *Aspinall*, 442 Mass. at 394. However, "[i]t is [also] well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In *Dumont*, the product packaging case previously alluded to as bearing some resemblance to Fitzgerald's Complaint, the First Circuit majority found it misleading to advertise coffee with the promise of "Hazelnut Crème" when the coffee did not in fact contain hazelnuts (or real

cream). *Dumont*, 934 F.3d at 40-41.[10] In this case, however, the court does not accept as true the conclusory and erroneous allegation that consumers "understand the phrase 'MADE FROM REAL GINGER' to mean that Polar's soft drinks are made using real ginger root . . . and that the consumers who drink the soft drink will receive the health benefits associated with consuming real ginger." Compl. ¶ 2. As liberally as the consumer statute is meant to be construed, a viable Chapter 93A claim "depends on the likely reaction of a reasonable consumer rather than an ignoramus."[11]  *Aspinall*, 442 Mass. at 395; *see also Dumont*, 934 F.3d at 44 (Lynch, J., dissenting). In other words, any reasonable consumer would know ginger ale for what it is – a carbonated drink with ginger flavoring and probably containing an unhealthy amount of sugar. [12]  Nothing about the "made from real ginger"

---

[10] Judge Lynch in her dissent makes the compelling point that the majority was pegging its test of what a reasonable consumer would think she would find in her bag of ground coffee on a simple misunderstanding of the meaning of the word "crème," just as here plaintiff confuses the taste of ginger with the root of the generic ginger plant.

[11] *See, e.g.*, *Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885, at *5 (D. Mass. Aug. 13, 2019), *reconsideration denied*, 2019 WL 4889599 (D. Mass. Oct. 2, 2019) ("Plaintiffs have not plausibly alleged that the use of "Honey" in Honey Bunches of Oats and the associated imagery would have misled a reasonable consumer into believing that the cereal was primarily or exclusively sweetened with honey.").

[12] The Miriam Webster's Unabridged Dictionary defines ginger ale as "a sweetened carbonated nonalcoholic beverage flavored mainly with

claim is deceptively untrue and no public policy is served by allowing this matter to percolate further.[13]

### ORDER

For the forgoing reasons, the Complaint is dismissed, albeit without prejudice.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

ginger extract." https://www.merriam-webster.com/dictionary/ginger%20ale (last visited Nov. 10, 2020).

[13] As well-stated by Judge Lynch in her dissent in *Dumont*, "[i]mposing on food producers the costs of defending meritless labeling litigation will have the [undesirable] effect of driving up prices for consumers." 934 F.3d at 47.